Barry J. Glickman
Bryan D. Leinbach
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022

Attorneys for Defendant Citibank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR CASTORINO,<br><br>                              Plaintiff,<br><br>          - against -<br><br>CITIBANK, N.A.,<br><br>                              Defendant. | Case No.:   07 Civ. 10606 (PC) |

**MEMORANDUM OF LAW OF CITIBANK, N.A. IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**ZEICHNER ELLMAN & KRAUSE LLP**
575 Lexington Avenue
New York, New York 10022
Telephone:  (212) 223-0400

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL BACKGROUND ....................................................................................... 3

PLAINTIFF'S COMPLAINT ................................................................................................ 3

ARGUMENT ......................................................................................................................... 5

POINT I    DISMISSAL OF THE COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(6) IS WARRANTED AND
APPROPRIATE ........................................................................................ 5

POINT II    THE CLAIM FOR BREACH OF CONTRACT MUST
FAIL ........................................................................................................... 6

POINT III    THE CLAIM FOR BREACH OF STANDARD OF CARE
MUST FAIL .............................................................................................. 7

POINT IV    PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES
MUST FAIL .............................................................................................. 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

Action S.A. v. Marc Rich & Co.,
  951 F.2d 504 (2d Cir. 1991) .................................................................................. 13

Conley v. Gibson,
  355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957) ........................................................ 6

D'Alessio v. New York Stock Exchange, Inc.,
  258 F.3d 93 (2d Cir. 1991) ........................................................................................ 5

Ft. Howard Paper Co. v. William D. Witter, Inc.,
  787 F.2d 784 (2d Cir. 1986) .................................................................................... 13

Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,
  128 F.3d 59 (2d Cir. 1997) ........................................................................................ 5

Kaleida Health v. Medtronic Sofamor Danek USA, Inc.,
  2006 U.S. Dist. LEXIS 92295 (W.D.N.Y. 2006) ...................................................... 6

Marbri Corp. of New York v. Puhekker,
  9 F.Supp.2d 425 (S.D.N.Y. 1998) ............................................................................. 5

Scheuer v. Rhodes,
  416 U.S. 232, 94 S.Ct. 1683 (1974) .......................................................................... 5

Tevdorachvilli v. Chase Manhattan Bank,
  103 F. Supp.2d 632 (E.D.N.Y. 2000) ................................................................... 7, 8

Topps Co. v. Cadbury Stani S.A.I.C.,
  380 F. Supp. 2d 250 (S.D.N.Y. 2005) ..................................................................... 13

Tyssen, Inc. v. S.S. Fortune Star,
  777 F.2d 57 (2d Cir. 1985) ...................................................................................... 13

**State Cases**

Borkowski v. Borkowski,
  39 N.Y.2d 982, 387 N.Y.S.2d 233 (1976) ............................................................... 13

Brown v. Bowery Sav. Bank,
  51 N.Y.2d 411, 434 N.Y.S.2d 916 (1980) ............................................................... 11

Calisch Associates, Inc. v. Manufacturers Hanover Trust Co.,
  151 A.D.2d 446, 542 N.Y.S.2d 644 (1st Dep't 1989) ............................................... 8

Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.,
129 A.D.2d 927, 514 N.Y.S.2d 1002 (3d Dep't 1987) ................................................. 6

Ginsburg v. Manufacturers Hanover Trust Co.,
55 Misc. 2d 1052, 287 N.Y.S.2d 818 (Sup. Ct., N.Y. Co. 1968) .......................... 11, 12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank,
57 N.Y.2d 439, 444 N.Y.S.2d 742 (1982) .................................................................. 7

Prudential-Bache Securities v. Citibank, N.A.,
73 N.Y.2d 263, 539 N.Y.S.2d 699 (1989) .................................................................. 9

Sapriel v. Charbit,
309 A.D.2d 601, 765 N.Y.S.2d 369 (1st Dep't 2003) ................................................ 11

Stella Flour and Feed Corp. v. National City Bank,
285 A.D. 182, 136 N.Y.S.2d 139 (1st Dep't 1954) ...................................................... 7

**State Statutes**

N.Y. Banking Law §134(5)(2008) ................................................................................ 11
N.Y. Banking Law §675(a)(2008) ................................................................................ 10

**PRELIMINARY STATEMENT**

Defendant Citibank, N.A., submits this memorandum in support of its motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) by reason of plaintiff's failure to state a claim upon which relief can be granted.

This action is a misguided attempt to assign liability to Citibank by asserting factually and legally meritless claims when, in fact, his recourse, if at all, is against a relative with whom he appears to be involved in an internecine dispute and whom he fails to join in this action. Citibank maintains a joint account in the names of plaintiff, Pedro Bizzozzero ("Pedro") and Nelson Castorino ("Nelson"), plaintiff's uncle. By this action, plaintiff alleges that Citibank is liable to him because it told Nelson that plaintiff had requested a meeting with a Citibank employee to discuss Nelson's use of the Account, after which, meeting Nelson initiated several transfers that effectively depleted the Account. The alleged claims are styled as a breach of contract and an amorphous common law "breach of standard of care." However, the complaint fails to and plaintiff cannot identify any alleged contract that Citibank could have breached. Indeed, the fact is that Citibank honored its contractual obligations to its depositors by allowing each of them, Nelson included, unfettered access to the funds in the account. To the extent that plaintiff alleges a "breach of standard of care," that sounds suspiciously like a garden variety negligence claim, for which no claim exists as courts have long held that the relationship between a bank and its depository is

strictly contractual. In short, there is no legal ground upon which Citibank could be liable to plaintiff.

As set forth below, the complaint must be dismissed as a matter of law because plaintiff has failed to and cannot state a claim for which relief could be granted. Specifically:

- The breach of contract claim must fail because plaintiff does not and cannot identify a contract between Citibank and plaintiff that Citibank allegedly breached.

- The "breach of standard of care" claim must fail because, under well settled law, a breach of contract cannot give rise to an independent claim sounding in negligence.

- The improperly plead claim for punitive damages must fail because such damages are not available in breach of contract actions.

It is important to recognize that the complaint alleges that the Florida law firm that is plaintiff's attorney of record in this action was retained to protect plaintiff's interest in the Account. Under the circumstances, rather than shifting the focus to Citibank's actions, plaintiff should be asking why his attorney did not promptly secure an injunction or otherwise seek this Court's intervention when it was concerned that Nelson might be taking actions detrimental to plaintiff's interest.

For all the foregoing reasons, this Court should grant Citibank's motion and dismiss the complaint in its entirety.

## PROCEDURAL BACKGROUND

On or about December 12, 2007, plaintiff commenced this action by filing a summons and complaint containing two claims for breach of contract and "breach of standard care." Finally, plaintiff purports to seek punitive damages, though not in a separately pleaded claim and almost as if an afterthought, in his ad damnum clause.

By letter dated February 7, 2008, Citibank's counsel made a written request pursuant to Rule 3D of this Court's Individual Practices seeking a pre-motion conference and permission to make a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Request"). Plaintiff's counsel responded to the Request by letter to this Court dated February 8, 2008 (the "Response"). In the Response, plaintiff claims that he has a valid claim against Citibank based on an implied covenant of commercial good faith. To be sure, the complaint contains no mention of any such alleged claim.

Following a pre-motion conference on February 28, 2008, this Court granted the Request and permitted Citibank to make this motion.

## PLAINTIFF'S COMPLAINT

By the complaint, plaintiff alleges that on September 1, 2005, he, Nelson and Pedro opened Citibank account number xxxx6167 (the "Account") at a Citibank financial center in Paraguay. Complaint at ¶5-6. Plaintiff further alleges in the

3

complaint that the Account was managed by Citibank's "International Personal Banking Division" in New York. Id. Plaintiff also alleges in the complaint that the account opening documents are in Spanish and that "the terms and conditions of an English version are controlling." Id. at 7. The complaint provides no further description of the terms and conditions which govern the Account.

By the complaint, plaintiff claims that, prior to 2007, he and Nelson became "embroiled in a dispute" following which Nelson terminated him from his "position in the family business." Id. at 11. Thereafter, plaintiff alleges that he retained his attorney of record in this action, Roth, Rousso & Katsman, LLP (the "Roth Firm"), to "assist him with investigation of the [A]ccount, to obtain more information about the [A]ccount with regard to withdrawals and deposits and to facilitate communication with Citibank to obtain information about the [A]ccount" in order to better protect Plaintiff's interests. Id. at ¶12.

Plaintiff further alleges in the complaint that on June 19, 2007 the Roth firm sent an email (the "June 19 E-mail") to Citibank employee Aaron Visbal ("Visbal") requesting a meeting to discuss the Account. Id. at ¶13-14. Plaintiff alleges that the June 19 E-mail asked Visbal: a) not to disclose plaintiff's request for a meeting to Nelson before the meeting took place; and b) to notify plaintiff of any request for a withdrawal. Id. at ¶15. To be sure, plaintiff fails to identify any agreement between Citibank and plaintiff that would require Citibank to notify him of withdrawals from the Account by a joint account holder.

Plaintiff alleges in the complaint that a meeting was held on July 9, 2007 (the "July 9 Meeting"), at which time Visbal is alleged to have told plaintiff that he told Nelson about of plaintiff's request for a meeting. Id. at 20. Plaintiff finally alleges that documents produced by Citibank approximately two months after the July 9 meeting demonstrate that Nelson had withdrawn "the bulk of the [A]ccount funds after Citibank informed him of plaintiff's desire for a meeting." Id. at ¶23-24.

## ARGUMENT

### POINT I

### DISMISSAL OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) IS WARRANTED AND APPROPRIATE

When faced with a Rule 12(b)(6) motion, "a court's task in determining the sufficiency of a complaint is 'necessarily a limited one.'" Marbri Corp. of New York v. Puhekker, 9 F.Supp.2d 425, 427 (S.D.N.Y. 1998) citing Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 62 (2d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). The issue is not whether a plaintiff will or might ultimately prevail on its claim, but whether it is entitled to offer evidence in support of the allegations in the complaint. Id. For purposes of determining a Rule 12(b)(6) motion, all material allegations of the complaint are to be accepted as true, and all reasonable inferences are to be drawn in favor of the non-moving party. D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93, 99 (2d Cir. 1991). Dismissal is warranted under Rule 12(b)(6) only if it appears beyond a doubt

that the plaintiff can prove no set of facts, consistent with its complaint, in support of its claims that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957).

For the reasons set forth below, the complaint does not manifest any cognizable claims and, thus, must be dismissed.

## POINT II

## THE CLAIM FOR BREACH OF CONTRACT MUST FAIL

The claim for breach of contract must fail because plaintiff does not identify a contract that Citibank allegedly breached.

To properly plead a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of a contract, (2) the plaintiff's performance of its obligations, (3) the defendant's failure to perform its obligations, and (4) that the plaintiff suffered damages as a result. Kaleida Health v. Medtronic Sofamor Danek USA, Inc., 2006 U.S. Dist. LEXIS 92295 at *8 (W.D.N.Y. 2006). To demonstrate the existence of a contract, a plaintiff must "at a minimum set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the documents comprising the agreement." Id.; see also Chrysler Capital Corp. v. Hilltop Egg Farms, Inc., 129 A.D.2d 927, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987).

Here, the complaint fails to clearly allege the existence of any contract upon which a breach of contract claim could be based or the specific terms of such an agreement. Rather, plaintiff gratuitously states that Citibank "breached its contract with [him] … by acting in a commercially unreasonably manner" without identifying: (a) any such agreement; or (b) the specific provisions upon which he bases his claim. Indeed, the complaint contains no reference to the terms of an agreement that would infer that a contract was breached. This failure to clearly allege the existence of a contract and the concomitant breach is fatal to plaintiff's claim. A fortiori, plaintiff's first claim for relief must be dismissed for failure to state a claim.

## POINT III

## THE CLAIM FOR BREACH OF STANDARD OF CARE MUST FAIL

Plaintiff's amorphous claim for "breach of standard of care" must fail because Citibank's contractual relationship with Plaintiff could not give rise to an independent claim sounding in negligence.

It is well-settled law that the relationship between a bank and its depositor arises from a contract between the parties. See Tevdorachvilli v. Chase Manhattan Bank, 103 F. Supp.2d 632, 640 (E.D.N.Y. 2000); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank, 57 N.Y.2d 439, 444 N.Y.S.2d 742, 745 (1982) Stella Flour and Feed Corp. v. National City Bank, 285 A.D. 182, 136 N.Y.S.2d 139, 142-43 (1st Dep't 1954). Courts have found that a depositor cannot allege a claim for negligence arising solely out of the depositor's contractual relationship with its bank,

stating that a failure to perform a proscribed task in connection with a contractual relationship cannot give rise to an independent claim for negligence. Tevdorachvili, 103 F. Supp.2d at 643 ("It is settled that a depositor may not sue his bank in negligence based solely on the contractual relationship between bank and depositor.")(citing Calisch Associates, Inc. v. Manufacturers Hanover Trust Co., 151 A.D.2d 446, 542 N.Y.S.2d 644, 645-46 (1st Dep't 1989).

Here, plaintiff's second cause of action must fail because, as in Tevdorachvili, it seeks to create an independent cause of action sounding in negligence based solely on his capacity as a depositor. In no uncertain terms, plaintiff alleges that Citibank breached "its common law duty to act with reasonable care" because it notified Nelson of plaintiff's desire to have a meeting with Citibank to discuss the Account. As discussed above, a depositor's claim against his bank must be based on a contract

The second claim for relief clearly seeks to assign liability to Citibank based upon a theory of negligence, despite the prohibition of such a claim. Indeed, plaintiff concedes that the second claim would have no merit if his relationship with Citibank was based upon an agreement between the parties. In paragraph 32 of the complaint, plaintiff alleges that Citibank maintained the Account as a fiduciary for Plaintiff "**[i]f no [] contractual relationship exists.**" (emphasis added). Even if this is to be construed as pleading in the alternative, plaintiff's second claim must fail.

In an attempt to salvage his fatally flawed claim, in the Response plaintiff cites to Prudential-Bache Securities v. Citibank, N.A., 73 N.Y.2d 263, 539

N.Y.S.2d 699 (1989) for the proposition that he has a valid claim for breach of an implied covenant of commercial good faith. The complaint, however, fails to mention, let alone plead the most fundamental elements of such a cause of action.

In any case, Prudential-Bache is distinguishable. There, plaintiff sued a depository bank because of the alleged criminal involvement of two bank employees in a "massive fraud," for which they were convicted, to launder stolen funds through two checking accounts maintained by a faithless employee of plaintiff corporation and his accomplice. Id., 73 N.Y.2d at 266. The bank employees were alleged to have actively participated in the fraud by opening the accounts without proper opening account records and corporate resolutions. The bank employees were also alleged to have allowed deposits without preparing currency transaction reports required by the Internal Revenue Service. Id. at 267.

In denying the depository bank's motion to dismiss a commercial bad faith claim, the New York Court of Appeals observed that: "Where a depository bank acts dishonestly – where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme – such conduct falls wholly outside the allocation of business risks that was contemplated by [the Uniform Comercial Code]." Id. at 275.

Here, even if the complaint were to be construed as alleging a claim for commercial bad faith, plaintiff does not and cannot allege that Citibank acted in a manner consistent with the dishonesty and bad faith underlying the claim set forth in

9

Prudential-Bache. Even assuming, arguendo, the truth of the allegations contained in the complaint, it is clear that Citibank's conduct does not and cannot constitute bad faith.

Banking Law §675(a) states, in relevant part, that

> [w]hen a deposit of cash… has been made or shall hereafter be made in or with any banking organization or foreign banking corporation transacting business in this state… in the name of such depositor…and another person and in form to be paid or delivered to either…such deposit…and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both…and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, **shall be a valid and sufficient release and discharge to the banking organization or foreign banking corporation for all payments or deliveries made on account of such deposit**…prior to the receipt by the banking organization or foreign banking corporation of notice in writing signed by any one of such joint tenants, not to pay or deliver such deposit or shares and the additions and accruals thereon in accordance with the terms thereof, and after receipt of any such notice, the banking organization or foreign banking corporation may require the receipt or acquittance of both such joint tenants for any further payments or delivery. (Emphasis added.)

N.Y. Banking Law §675(a)(2008).

Courts interpreting Banking Law §675 have held that it "immunizes banks from liability for withdrawals made by joint tenants from a joint account."

10

Sapriel v. Charbit, 309 A.D.2d 601, 765 N.Y.S.2d 369, 370 (1st Dep't 2003)(citing Brown v. Bowery Sav. Bank, 51 N.Y.2d 411, 434 N.Y.S.2d 916, 917 (1980). Fact is, Citibank is bound to honor its customer's request to withdraw funds from an account. Plaintiff does not and cannot allege that any agreement existed between Citibank and plaintiff that would change this uniform rule.

In addition, Banking Law §134(5) provides:

> Notice to any bank or trust company of an adverse claim to any property, or to a deposit of cash or securities standing on its books to the credit of, or held for the account of, any person shall not be effectual to cause said bank or trust company to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank or trust company from a court of competent jurisdiction in the United States in a cause therein instituted by him wherein the person to whose credit the deposit stands, or for whose account the property or deposit is held, or his executor or administrator is made a party and served with summons, or shall execute to said bank or trust company, in form and with sureties acceptable to it a bond, indemnifying said bank or trust company from any and all liability, loss, damage, costs and expenses, for and on account of the payment of or delivery pursuant to such adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands on the books of said bank or trust company or for whose account the property or deposit is held by said bank or trust company.

N.Y. Banking Law §134(5)(2008). It is, thus, clear that Citibank's duty to honor Nelson's request to withdraw funds did not disappear simply because plaintiff allegedly informed Citibank of his "dispute" with Nelson. See Ginsburg v. Manufacturers

11

Hanover Trust Co., 55 Misc. 2d 1052, 287 N.Y.S.2d 818, 821 (Sup. Ct., N.Y. Co. 1968). Certainly, had Citibank "placed a hold" on the Account as plaintiff urges, it would have exposed itself to Nelson for improperly restraining his access to his own funds in the Account without any legal authority.

As discussed above, the Roth Firm was retained to protect plaintiff's interest in the Account. Given that mandate, neither plaintiff nor his counsel should be heard to complain that Citibank did not voluntarily take action interfering with Nelson's rights as a depositor when they did not promptly secure an injunction or otherwise seek this Court's intervention.

Plaintiff does not plead any set of facts that would support any of the legal claims contained in the complaint. Consistent with this, plaintiff does not and cannot allege the type of dishonesty and bad faith required to pursue a "commercial bad faith" claim.

By reason of the foregoing, plaintiff's second claim for relief must fail.

### POINT IV

### PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES MUST FAIL

Although he does not separately plead a claim for punitive damages, plaintiff purports to seek punitive damages in his ad damnum clause. However, plaintiff cannot state a claim for punitive damages based upon the facts as alleged in the

complaint. It is well-settled that a plaintiff may not seek punitive damages for a breach of contract, even in instances where the breach is malicious or intentional. See Tyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57 (2d Cir. 1985); Ft. Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 793 (2d Cir. 1986); Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005). Indeed, even then, courts are loath to award punitive damages and do so only in tort cases upon a showing by plaintiff that the defendant committed "gross, wanton or willful fraud or other morally culpable conduct." Action S.A. v. Marc Rich & Co., 951 F.2d 504, 509 (2d Cir. 1991); Topps Co., 380 F. Supp. 2d at 264 (quoting Borkowski v. Borkowski, 39 N.Y.2d 982, 387 N.Y.S.2d 233 (1976)).

Here, the only possible basis for plaintiff's claims against Citibank is his contractual relationship with Citibank as a depositor and a beneficial owner of the Account. Punitive damages are not available for a breach of contract. For this reason alone, any claim for punitive damages must fail.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that this Court grant Citibank's motion to dismiss the complaint in its entirety together with such other and further relief as it deems just and proper.

Dated:   New York, New York
         March 31, 2008

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Barry J. Glickman
    Bryan D. Leinbach
    Attorneys for Defendant
      Citibank, N.A.
    575 Lexington Avenue
    New York, New York  10022
    (212) 223-0400