Barry J. Glickman
Bryan D. Leinbach
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022

Attorneys for Defendant Citibank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMAR CASTORINO,<br><br>                                  Plaintiff,<br><br>               - against -<br><br>CITIBANK, N.A.,<br><br>                                  Defendant. | Case No.:   07 Civ. 10606 (PAC) |

## REPLY MEMORANDUM OF LAW OF CITIBANK, N.A.

ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone:  (212) 223-0400

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................2

POINT I   PLAINTIFF FAILS TO IDENTIFY THE CONTRACTUAL
OBLIGATION THAT CITIBANK IS ALLEGED TO HAVE
BREACHED ..........................................................................................................2

POINT II  PLAINTIFF'S STANDARD OF CARE CLAIM IS CONTRARY TO
THE CUSTOMER AGREEMENT AND APPLICABLE LAW ...................5

CONCLUSION .............................................................................................................................8

## **PRELIMINARY STATEMENT**

Defendant Citibank, N.A., submits this memorandum of law in reply to plaintiff's opposition and in further support of its motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) by reason of plaintiff's failure to state a claim upon which relief can be granted.

By his opposition, plaintiff fails to controvert Citibank's claim that its alleged disclosure to Nelson that plaintiff wanted to schedule a meeting to discuss the Account is actionable. Indeed, plaintiff admits that he fails to plead the contractual obligation that Citibank is alleged to have breached. This alone is fatal to plaintiff's breach of contract claim. In what can best be characterized as a desperate effort to excuse this pleading deficiency and salvage the breach of contract claim, plaintiff would have this Court believe that he cannot specify the alleged breach because he has only the Spanish version of the account "opening documents" and that, by its terms, the English iteration is controlling. This is a red herring.

In light of plaintiff's effort to defeat this motion by referring to the account opening documents, Citibank submits the accompanying declaration of Citibank Vice President Kenneth Strutin in which he explains that the Account is governed by a Client Manual dated May 26, 2007 (the " Client Manual") which states that by opening an account each Citibank customer agrees to be bound by the rules and procedures set forth in the Client Manual, along with the rules and procedures of the International Personal Banking Marketplace Addendum dated October 27, 2006 (the "Addendum" and, collectively with the Client Manual, the "Account Agreement"), which are incorporated into the Client Manual by reference. The Addendum further states that its provisions are controlling to the extent that such provisions are in conflict with those in the Client Manual. As evidenced by the Strutin Declaration, (i) the English version of the Account Agreement is merely a

translation of the Spanish version, (ii) the English version is "controlling" only when the two are in conflict with each other and, most damning, (iii) on its face the Account Agreement contains explicit language that defeats plaintiff's specious claim. A fortiori, the Account Agreement -- in whatever language -- provides no basis for a breach of contract claim.

Equally frivolous is plaintiff's contention that his alternative "breach of standard of care" claim demonstrates a tort independent of Citibank's alleged contractual obligation because Citibank allowed Nelson to withdraw funds. Not only do the very "opening documents" upon which plaintiff relies belie such a claim, it flies in the face of clear statutory provisions and controlling authority from the New York Court of Appeals showing that a bank may honor the instructions of only one depositor in a joint account. Moreover, plaintiff's allegation that he gave Citibank notice of a dispute with Nelson and that Citibank was, thus, under some amorphous duty to ignore Nelson's rights as a depositor ignores the unambiguous language of the opening documents, which states unequivocally that Citibank will not honor requests to "block" or "freeze" joint accounts upon only one account holder's request.

As a result, Citibank's motion should be granted in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO IDENTIFY THE CONTRACTUAL OBLIGATION THAT CITIBANK IS ALLEGED TO HAVE BREACHED

Plaintiff concedes that to successfully plead a cause of action for breach of contract in New York a plaintiff must clearly set forth the existence of a contract between the parties and the

defendant's failure to perform under that contract. Remarkably, in spite of this, neither his complaint nor his lawyer's opposition to Citibank's motion contains any more than conclusory allegations that Citibank breached a contract without identifying the specific obligation Citibank allegedly failed to perform. Even plaintiff's vague references to "Spanish opening documents" are insufficient to set forth the existence of a contract because they do not identify the specific agreement to which plaintiff refers.

In light of these shortcomings, plaintiff's claim that his breach of contract claim satisfies the pleading standard set forth in Fed R. Civ. P. 8(a) is meritless. Rule 8(a) requires a plaintiff to set forth a "plain statement of the claim showing that the pleader is entitled to relief." The rule is intended to provide a defendant with sufficient notice of the true nature of the claim being alleged so the defendant can prepare a defense to the action. See, Apollon Waterproofing & Restoration, Inc. v. Bergassi, 87 Fed. Appx. 757, 759 (2nd Cir. 2004) (under the liberal pleading standard of Fed. R. Civ. P. 8(a), plaintiffs must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery). Here, plaintiff fails to meet this standard because there is no "plain statement" setting forth an obligation in an agreement that Citibank allegedly breached.

The excuse that plaintiff's hands are tied because he does not have the English language version of the Account Agreement is disingenuous. Indeed, plaintiff does not and cannot cite any support for his claim based on his reading of the Spanish iteration of the Account Agreement. Moreover, plaintiff knows from his review of the Spanish version, the English version is controlling only "**in the event of any difference in meaning** between the [Spanish] translation and the English language version." (Emphasis added.) See Strutin Declaration ¶7 and Exhibit B at p.3. Certainly, plaintiff admits that he has the Spanish language version and, nevertheless, he cites no

3

language therein that could be construed as providing a basis for this frivolous claim. See Plaintiff's Opposition at p. 6.

Finally, plaintiff's reliance on Prudential-Bache Securities v. Citibank, N.A., 73 N.Y.2d 263, 539 N.Y.S.2d 699 (1989) in support of his claim that he has a viable breach of contract claim because of Citibank's alleged breach of an "implied duty of commercial reasonableness" is mistaken and evidences a gross misreading of that case. In Prudential-Bache, the New York Court of Appeals addressed a tort based claim, not a contract claim. Id., 73 N.Y.2d at 268.

Moreover, as stated in Citibank's original brief, the facts here are hugely distinguishable from those in Prudential-Bache. There, plaintiff's claim was based on a massive fraudulent scheme in which two bank officers were involved to launder money stolen from plaintiff with the help of one of plaintiff's faithless employees. Id. at 266. The two bank employees pled guilty to Federal crimes arising from their knowing and active participation in the above-mentioned scheme. Id. at 276. Subsequent cases addressing Prudential-Bache have held that a plaintiff must allege "knowing participation" in a fraudulent scheme. See Sapriel v. Charbit, 309 A.D.2d 601, 765 N.Y.S.2d 369, 370 (1st Dep't 2003). Here, plaintiff makes no claim of fraudulent activity and his conclusory allegations that Citibank knew of "the rift between [plaintiff and Nelson]" and "Nelson's potential scheme to loot the Account" cannot form the basis for a claim for "commercial bad faith" because they merely allege knowledge without any active participation.

As a result, Citibank's motion should be granted.

## POINT II

## PLAINTIFF'S STANDARD OF CARE CLAIM IS CONTRARY TO THE CUSTOMER AGREEMENT AND APPLICABLE LAW

Plaintiff's allegation that Citibank was "on notice of a dispute" between himself and Nelson and, in spite of that, allowed Nelson to withdraw funds from the Account cannot form the basis for a tort based "breach of standard of care" claim because Citibank's relationship with its depositors is governed by the Client Manual and Addendum. Specifically, the Addendum provides as follows:

> **Joint Account.** With a joint account, we can act on the instructions of any one or more joint account holder(s) whose signature is on file with us. However, **we will not honor requests to "block" or "freeze" the account upon the request of an individual account holder(s) or to disregard any instruction provided to us by an individual account holder(s), since all account holders have equal entitlement to the account funds.** Any joint account holder may close a joint account. **In the event there is a dispute between any one or more of the account holders, it is up to the account holders themselves to resolve the dispute amongst themselves.** International Personal Banking will not make any determination regarding the merits, nor will it adjudicate, such dispute  NOTE: Nothing herein alters International Personal Banking's ability to "block," "freeze," "close," or take any other action with respect to an account in its sole discretion.

(Emphasis added.) See Strutin Declaration ¶8 and attached Exhibit B, p.7. It is, thus, beyond cavil that the highlighted language -- whether in English or Spanish -- belies the efficacy of plaintiff's claim that Citibank breached a duty to him by "failing to follow [his] specific instructions", "failing to place a hold on the account after being advised of a conflict between [plaintiff] and the other account holders", and allowing Nelson to withdraw funds from the Account. Surely, had Citibank placed a hold on the Account, as plaintiff now urges, such conduct would have been in clear violation

5

of the explicit language governing the parties' contractual relationship. It is equally clear from this provision that Citibank acted in accordance with the clear provisions of the Addendum when it honored Nelson's request to transfer funds from the Account as each joint account owner has equal entitlement to the funds in the Account. Finally, this contractual provision clearly disavows the notion that Citibank must take "notice" of alleged disputes between a joint account's owners.

Similarly, plaintiff can present no set of facts to support a claim that Citibank acted in bad faith by failing to treat all of the Accounts owners in the same manner. On its face, the Addendum provides that each Account owner is able to access all of the Account's funds. Therefore, in honoring Nelson's request for the funds in the Account, Citibank merely treated Nelson as it would have treated Omar under similar circumstances. Thus, plaintiff cannot plead an actionable claim against Citibank.

Finally, plaintiff's reliance on <u>Estate of Swidow v. Kachkowski</u>, File No. 315458, 2003 N.Y. Misc. LEXIS 38 (N.Y. Sur. Ct. January 16, 2003) for the proposition that Banking Law Section 675(a) does not insulate Citibank from his claim is woefully misplaced. As stated in Citibank's original memorandum of law in support of this motion, under Section 675(a), a bank is discharged from liability where it pays a joint account to any joint account owner "prior to the receipt by the banking organization ... of **notice in writing signed by any of such joint tenants, not to pay or deliver such deposit ...** and after the receipt of any such notice, the banking organization. . .**may** require the receipt or acquittance of both such joint tenants for any further payments or delivery." (Emphasis added.) N.Y. Banking Law §675(a) (2008)).

6

In <u>Swidow</u>, one joint account owner sent the bank a written letter of indemnity requesting a stop payment order for two official bank checks written against the joint account by another joint account owner. <u>Id.</u> at **3. After the bank refused to honor these official bank checks, such customer sued the bank based on the claim that it had an obligation to pay official bank checks purchased with proceeds from a joint account. <u>Id.</u>, 2003 N.Y. Misc. LEXIS 38 at **4-5. Clearly, that is not the case here.

Here, the only writing upon which plaintiff relies is an e-mail from his attorney in which he purportedly (i) sought a meeting to discuss the account and (ii) asked merely that Citibank notify plaintiff of "any request for withdrawal, transfer, or movement of money in the account." (Complaint, ¶13-15.) This cannot, by any reading, be construed as a notice under Section 675(a) because it does not direct Citibank not to pay or deliver any deposit.

Moreover, the decision in <u>Swidow</u> cites approvingly to <u>Brown v. Bowery Sav. Bank</u>, 51 N.Y.2d 411, 434 N.Y.S.2d 916 (1980) in which the New York Court of Appeals observed that a bank would enjoy complete immunity from a joint account owner's claims that it permitted another joint account owner to withdraw all of the funds from an account, stating:

> The bank is correct that subdivision (a) of section 675 would insulate it from liability if [joint account owner] had withdrawn all of the money in the [joint] account and placed it in a new account under his and Mrs. McCullough's names.

<u>Id.</u>, 51 N.Y.2d at 415. Further, as <u>Swidow</u> acknowledges, Section 675(a) states that upon receipt of written notice from a joint account directing it to withhold funds from another joint account holder, a bank "**may** require the receipt or acquittance of both such joint tenants for any further payments." Based on the foregoing, above and beyond the inapplicability of <u>Swidow</u> to the matter before this

7

Court, we respectfully submit that the Surrogate's Court exceeded its authority under Section 675(a), and, as a result, its holding is contrary to New York law. As a result, plaintiff's breach of standard of care claim must fail.

## CONCLUSION

For all the foregoing reasons, we respectfully request that this Court grant Citibank's motion to dismiss the complaint in its entirety together with such other and further relief as it deems just and proper.

Dated:   New York, New York
         May 15, 2008

                                    ZEICHNER ELLMAN & KRAUSE LLP

                                    By: /s/
                                        Barry J. Glickman
                                        Bryan D. Leinbach
                                        Attorneys for Defendant
                                          Citibank, N.A.
                                        575 Lexington Avenue
                                        New York, New York  10022
                                        (212) 223-0400

## CERTIFICATE OF SERVICE

      Michael W. Antonivich, hereby certifies under penalty of perjury that on the 15th day of May, 2008, I served a true copy of the within **CITIBANK'S REPLY MEMORANDUM OF LAW** upon the attorneys for plaintiff hereinafter named at the places hereinafter stated by depositing the same, properly enclosed in post-paid, properly addressed wrappers, into the exclusive care and custody of depository maintained and controlled by the U.S. Post Office for delivery by first class mail to said attorneys at their last known addresses given below:

FISCHER & MANDELL LP
550 Fifth Avenue, 6th Floor
New York. New York 10036

ROTH, ROUSSO & KALZMAN LLP
18851 N.W. 29th Avenue, Suite 900
Aventura, Florida 33180


Dated: New York, New York
       May 15, 2008

_____
Michael W. Antonivich