UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OMAR CASTORINO,                              :
                                             :
                    Plaintiff,               :
                                             :
       - against -                           :
                                             :
CITIBANK N.A.,                               :
                                             :
                    Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 5, 2008

07 Civ. 10606 (PAC)


OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Omar Castorino ("Plaintiff") alleges that Defendant Citibank N.A. ("Defendant") breached its contractual and common law duties concerning a joint banking account (the "Joint Account") opened by Plaintiff, his uncle Nelson Castorino ("Nelson"), and a third party. Plaintiff alleges that he and Nelson became "embroiled in a dispute." Concerned about the Joint Account, Plaintiff contends that he instructed Defendant to notify him of any request for withdrawal made by Nelson. Thereafter Defendant notified Nelson of Plaintiff's request, and Nelson subsequently transferred more than $1 million out of the Joint Account.

On March 31, 2008, Defendant moved to dismiss Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

### I.    Facts

Plaintiff is a citizen and resident of Paraguay. (Compl. ¶ 3.) On September 1, 2005, Plaintiff, Nelson, and a third party opened the Joint Account with Defendant Citibank through Citibank's International Personal Banking Division, which is headquartered in New York. (Id.

¶¶ 5, 6.)  Defendant provided Plaintiff with a Spanish version of the Joint Account's opening documents (the "Spanish Version").  (See Pl.'s Mem. of Law in Response to Def.'s Motion to Dismiss ("Pl. Response") at 6.)  An English version of the opening documents (the "English Version") also exists, although according to Plaintiff, Defendant did not provide him with a copy.[1]  (Compl. ¶ 8.)

The Joint Account's balance was $1,103,372.65 in June 2007.  (Id. ¶ 10.)  Prior to that, Plaintiff and Nelson became embroiled in a dispute and Nelson terminated Plaintiff's position in the family business.  (Id. ¶ 11.)  Plaintiff then hired the Miami-based law firm of Roth, Rousso & Katsman, LLP (the "Roth Firm") to facilitate communications with Defendant Citibank in order to ensure that Plaintiff's interests in the Joint Account were protected.  (Id. ¶ 12.)  On June 19, 2007, the Roth Firm sent an e-mail to Defendant requesting a meeting to discuss the Joint Account and specifically asking that the request for a meeting not be disclosed to Nelson.  (Id. ¶¶ 13-15.)  The e-mail also asked Defendant to inform Plaintiff if Nelson attempted to withdraw, transfer, or otherwise move the money in the Joint Account.  (Id. ¶ 15.)

The Roth Firm ultimately arranged a meeting with Defendant on July 9, 2007 in New York.  (Id. ¶¶ 16-20.)  At the meeting, Defendant's representative told Plaintiff that (1) Defendant had informed Nelson of Plaintiff's request for a meeting; and (2) after being informed of the request, Nelson instructed Defendant to transfer an amount of money in excess of one million dollars out of the Joint Account and into a separate account to which only Nelson and the

---

[1] Although Plaintiff admits to possessing a copy of the Spanish Version of the opening documents, he does not attach a copy to the Complaint or any pleadings, does not cite to them, and does not provide the Court with even a minimal description of their contents.  According to Defendant, the Joint Account is governed by (1) a Client Manual and (2) an International Personal Banking Addendum.  (Def.'s Reply Mem. of Law ("Def. Reply") at 1.) Defendant refers to these two documents collectively as the "Account Agreement," and has submitted them as Exhibits A and B, respectively, to the Declaration of Citibank Vice President Kenneth Strutin.  It is clear that the "opening documents" referred to by Plaintiff are the two documents comprising the "Account Agreement" described by Defendant.  When the Court refers to the Spanish Version and the English Version, it is referring to the two versions of the opening documents/Account Agreement.

third party had access.  (Id. ¶¶ 20, 21, 25.)  On September 13, 2007, after receiving multiple

requests from Plaintiff for additional information, Defendant provided Plaintiff with documents

related to the Joint Account confirming that Nelson had withdrawn the bulk of the funds.  (Id. ¶¶

22-24.)

## II.    Plaintiff's Claims

Plaintiff's Complaint advances two causes of action.[2]  First, Plaintiff alleges that

Defendant breached its contractual obligations "by acting in a commercially unreasonable

manner in deliberately and unfaithfully ignoring [Plaintiff's] request for a confidential meeting

and by facilitating Nelson's looting of the account."  (Compl. ¶ 27.)

Second, in the alternative, Plaintiff alleges that Defendant breached its common law duty

of reasonable care by:

> 1) failing to follow [Plaintiffs'] specific instructions…; 2) failing to place a hold
> on the account until the conflict between the account holders was resolved; 3) by
> allowing one of the account holders to withdraw 90% of the funds in the account
> knowing a conflict existed between account holders and not notifying the other
> account holder in a commercially reasonable time frame; 4) by concealing and
> also withholding information pertinent to the account from [Plaintiff] over a period
> of months despite consistent requests for said information."

(Id. ¶ 35.)

## DISCUSSION

## III.    Motion to Dismiss Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in

the plaintiff's complaint and draws all inferences in the plaintiff's favor.  See Allaire Corp. v.

---

[2] In its memorandum of law in support of its motion to dismiss, Defendant alleges that Plaintiff's Complaint also
makes a claim for punitive damages.  (Def.'s Mem. of Law in Support of Motion to Dismiss ("Def. Memo")  at 12-
13.)  Plaintiff's Response denies that he made such a claim.  (Pl. Response at 3.)  While the Complaint claims
contractual and tort damages "in excess of $1,000,000," this is not a claim for punitive damages and the Court
accepts Plaintiff's statement that he is not seeking punitive damages.  In any event, on the facts of this case, punitive
damages would not be appropriate.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead

enough facts to be plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.

Ct. 1955, 1974 (2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (holding that a

pleader must "amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible").

## IV.      Plaintiff's Breach of Contract Claim

First, Plaintiff claims that Defendant breached its contractual duties "by acting in a

commercially unreasonable manner."  (Compl. ¶ 27.)

Under New York state law, to plead a cause of action for breach of contract, a plaintiff

must allege: "(1) formation of a contract between the parties; (2) performance by plaintiff; (3)

defendants' failure to perform; and (4) resulting damage."  Severo v. Rockefeller University,

2008 WL 1809543, at *3 (N.Y. Sup. Ct. Apr. 14, 2008); Kaleida Health v. Medtronic Sofamor

Danek USA, Inc., 2006 U.S. Dist. LEXIS 92295, at *7 (W.D.N.Y. Dec. 21, 2006).  Although a

plaintiff need not attach a copy of the contract to the complaint or plead the contract's terms

verbatim, see Griffin Bros., Inc. v. Yatto, 415 N.Y.S.2d 114, 114-15 (3d Dep't 1979), the

complaint "must at a minimum set forth the terms of the agreement upon which liability is

predicated…."  Kaleida Health, 2006 U.S. Dist. LEXIS at *8 (citations omitted).

Defendant argues that Plaintiff's breach of contract claim must be dismissed because

"[Plaintiff's] complaint fails to clearly allege the existence of any contract upon which a breach

of contract claim could be based or the specific terms of such an agreement."  (Def. Memo at 7.)

Plaintiff contends that he has alleged the existence of a contract: he claims that his

Complaint makes clear that the Spanish and English Versions, taken together, "form the contract

that governs the relationship, duties, and obligations of the parties, both expressly and

implicitly." (Pl. Response at 6.) Plaintiff further contends that, to the extent he has failed to identify the specific contractual terms that Defendant is alleged to have breached, this is only because (1) the Spanish Version states that the English Version governs the agreement between the parties; but (2) Defendant has never provided Plaintiff with a copy of the English Version. (See id.) Consequently, Plaintiff can "only speculate as to the express duties [Defendant] agreed to undertake." (Id. at 1-2.)

Plaintiff's argument is disingenuous. Plaintiff admits that he possesses a copy of the Spanish Version and even states that his "Complaint specifically references the existence of a contract between the parties in the form of the Spanish opening documents…." (Id. at 6.) Even if some uncertainty exists as to whether the Spanish or English Version is controlling, common sense dictates that the Spanish Version is, at the very least, substantially similar to the English Version, and thus could serve as a basis for properly pleading Plaintiff's breach of contract claim. Yet Plaintiff's Complaint is barren of any contractual provision in the Spanish Version that he alleges Defendant breached.

Moreover, the contract's terms, as stated in the English Version, are squarely at odds with Plaintiff's breach of contract claim.[3] First, Plaintiff has misconstrued the relationship between the Spanish and English Versions. The Spanish Version is a translation of the English Version; the English Version is controlling only "in the event of any difference in meaning between the [Spanish] translation and the English language version." (Decl. of Kenneth Strutin ("Strutin

---

[3] On a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distributors Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005). In doing so, although it must resolve any contractual ambiguities in favor of the plaintiff, the court is "not obliged to accept the allegations of the complaint as to how to construe such documents…." Id. In the present case, since Plaintiff pleads breach of contract, the underlying contract is unquestionably "integral to the complaint." Plaintiff fails to attach a copy of the contract to the Complaint or make reference to its specific terms, but by his own admission the Complaint incorporates the contract by reference. (See Pl. Response at 6.) It is therefore appropriate for the Court to consider the English Version of the contract supplied by Defendant when determining whether dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6) is warranted.

Decl.") Ex. B at 3.)  Since Plaintiff has the Spanish Version, he cannot claim ignorance of the

terms governing his agreement with Defendant.

Second, the language in the English Version governing joint accounts plainly defeats

Plaintiff's claims:

> With a joint account, we [Defendant Citibank] can act on the instructions of
> any one or more joint account holder(s) whose signature is on file with us.
> However, we will not honor requests to "block" or "freeze" the account upon
> the request of an individual account holder(s) or to disregard any instruction
> provided to us by an individual account holder(s), since all account holders have
> equal entitlement to the account funds.  Any joint account holder may close a
> joint account.  In the event there is a dispute between any one or more of the
> account holders, it is up to the account holders to resolve the dispute amongst
> themselves.  [Citibank] will not make any determination regarding the merits,
> nor will it adjudicate, such dispute.

(Strutin Decl. Ex. B at 7.)

The English Version's language comports with provisions of the New York Banking Law

§ 675(a), which provides that the establishment of a joint banking account "shall be a valid and

sufficient release and discharge to the [bank] for all payments or deliveries made" by the bank to

any of the account's joint tenants.  Courts have held that § 675(a) "immunizes banks from

liability for withdrawals made by joint tenants from a joint account."  Sapriel v. Charbit, 765

N.Y.S.2d 369, 370 (1st Dep't 2003) (citing Brown v. Bowery Sav. Bank, 51 N.Y.2d 411, 414-15

(1980)).[4]  In other words, Defendant was obliged, not only by its contract with Plaintiff and

---

[4] Plaintiff cites to Swidow v. Kachkowski et al., 2003 WL 175256 (N.Y. Sur. Ct. Jan. 16, 2003), in an attempt to
cast doubt upon the applicability of Banking Law § 675(a) to the present case.  (See Pl. Response at 12.)  In
Swidow, one joint account owner's attempt to write two checks against a joint account was thwarted by a second
joint account owner, who (1) sent a written letter of indemnity to the bank, requesting a stop payment order on the
two checks; and (2) following the bank's issuance of the stop payment order, closed the account and withdrew the
joint account's funds.  Swidow, 2004 WL 175256, at *1.  The Surrogate Court held that § 675(a) did not absolve the
bank of liability because it was aware of the competing claims to the account's funds.  Id. at *3.  Swidow, however,
is factually distinct from the present case: in Swidow, the bank received a formal stop payment request and letter of
indemnity from the second account owner, whereas here, Defendant merely received an e-mail from the Roth Firm
requesting a meeting and asking that it be notified if Nelson attempted to access the Joint Account.  Moreover,
Swidow could be viewed as incorrectly applying § 675(a) given that its holding is clearly contradicted by the
holdings in Bowery Savings Bank (to which Swidow approvingly cites) and Sapriel.

Nelson but also by the banking laws of New York, to honor Nelson's request to withdraw the funds.

Moreover, Banking Law § 134(5) states that banks shall not recognize an adverse claim to funds in an account unless the adverse claimant either (1) secures a "restraining order, injunction or other appropriate process against [the bank] from a court of competent jurisdiction in the United States" or (2) provides the bank with a bond indemnifying it "from any and all liability, loss, damage, costs and expenses" arising from the bank's denial of access to the account funds to other claimants.  N.Y. Banking Law § 134(5)(2008).  Under New York law, then, the e-mail "notice" received by Defendant of Plaintiff's dispute with Nelson did not overcome Defendant's obligation to allow Nelson access to the Joint Account.

Plaintiff fails to plead his breach of contract claim with even a minimal degree of specificity despite having in his possession the Spanish Version of the contract upon which his claim is supposedly based.  The provisions of the contract as stated in the English Version clearly defeat Plaintiff's claim—and these provisions reflect what is permitted under New York Banking Law.  Defendant's motion to dismiss Plaintiff's breach of contract claim is therefore granted.

## V.     Breach of Common Law Duty of Reasonable Care

Next, Plaintiff argues that, if no contractual relationship exists between the parties, Defendant is still liable to Plaintiff for breach of a common law duty of reasonable care. (Compl. ¶¶ 32, 33.)  Indeed, Plaintiff contends that he may pursue this claim even if a contract did exist.  (See Pl. Response at 9-10.)

"[U]nder New York law a contract cause of action is generally the legal theory of recovery available to a depositor against his bank."  Tevdorachvili v. Chase Manhattan Bank,

103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank, 57 N.Y.2d 439, 444 (1982)).  The existence of a contract between a bank and a depositor does not, by itself, create a fiduciary relationship; for such a relationship to exist, it must "rest on some duty independent of…the contract."  Tevorachvili, 103 F. Supp. 2d at 640. Thus, "a tort may accompany a breach of contract…only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is also violated."  Quail Ridge Assocs. v. Chemical Bank, 162 A.D.2d 917, 919 (3d Dep't 1990) (citation and internal quotation marks omitted).

Here, Plaintiff contends that, because Defendant was on notice of the dispute between Plaintiff and Nelson, Defendant owed Plaintiff a duty of care independent of the contract.  (Pl. Response at 10-11.)  Defendant violated this duty by failing to follow Plaintiff's instructions regarding the account, thereby facilitating Nelson's transfer of the funds.  (See id. at 11-12.)

The consequences of adopting such a rule would have pernicious effects on the banking system.  Accordingly, the law is clear that claims of a breach of a common law fiduciary duty fail when the plaintiff is unable to show how the alleged duty is "in any way distinct from the defendants' obligations under the terms of the [contract] itself."  J.P. Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004).  In other words, there is no common law fiduciary duty when the plaintiff merely alleges a breach of "precisely the contractual sort of relationship that, by itself, supports no further allegation of fiduciary breach."  Tevdorachvili, 103 F. Supp. 2d at 640.

In the present case, the two causes of action in Plaintiff's Complaint are based upon the same facts.  Both seek to hold Defendant liable for disclosing Plaintiff's request for a meeting to Nelson and failing to prevent Nelson's subsequent transfer of funds out of the Joint Account.

(See Compl. ¶¶ 27, 34.)  "[C]ourts have said that the plaintiff may not transmogrify the contract claim into one for tort," Winnick, 350 F. Supp. 2d at 401 (quoting Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980)), yet that is clearly what Plaintiff is attempting to do here. Furthermore, Plaintiff's argument that Defendant's "notice" of the dispute between Plaintiff and Nelson created a fiduciary duty springing from, yet independent of, the contract is baseless.  The contract clearly states that even in the face of such notice Citibank will not block or freeze the account, or otherwise insert itself into a dispute among joint account holders.  (See Strutin Decl. Ex. B at 7.)  As Defendant observes: "this contractual provision clearly disavows the notion that Citibank must take 'notice' of alleged disputes between a joint account's owners."  (Def. Reply at 6.)

In a letter to the Court dated February 8, 2008, Plaintiff attempts to salvage his common law breach claim by suggesting that the claim is, in fact, based upon Defendant's breach of an implied covenant of commercial good faith.  (Letter from Barry R. Fischer dated Feb. 8, 2008 ("Pl. Letter").)  In support of this modified claim, Plaintiff cites to Prudential-Bache Securities, Inc. v. Citibank N.A., 73 N.Y.2d 263 (N.Y. 1989), for the proposition that Plaintiff may advance "a cause of action for breach of the covenant of commercial good faith where a depository bank has actual knowledge of facts and circumstances and acts upon that knowledge dishonestly or in bad faith, thus becoming a witting or unwitting participant in a fraudulent scheme."  (Pl. Letter at 2 (citing Prudential-Bache, 73 N.Y.2d at 275).)

This alternative argument is unavailing.  First, Plaintiff's Complaint does not plead an alleged breach of commercial good faith.  Second, the facts of Prudential-Bache are easily distinguishable from the present case.  Prudential-Bache involved a massive money laundering scheme for which certain bank employees were ultimately convicted. 73 N.Y.2d at 266-68.  In

holding the defendant bank liable for breach of commercial good faith, the court stated that "[w]here a depository bank acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme—such conduct falls wholly outside the allocation of business risks that was contemplated by [the Uniform Commercial Code]." Id. at 275. In the present case, Defendant never acted dishonestly, and certainly never acted with bad faith such that it became a participant in a fraudulent scheme. Quite to the contrary, it acted in accordance with its contractual obligations by refusing to block or freeze the Joint Account; refusing to withhold information relating to the Joint Account from one account holder at the request of the other; and refusing to involve itself in the dispute between Plaintiff and Nelson.

In sum, Plaintiff's second cause of action fails to state a claim upon which relief may be based. Defendant's motion to dismiss Plaintiff's breach of reasonable care claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety and Plaintiffs' Complaint is DISMISSED. The Clerk of the Court is directed to terminate this matter.

Dated: New York, New York
      December _5_, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge

10